IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ERIC ADORNO-ROSARIO<br>   Petitioner<br><br>v.<br><br>UNITED STATES OF AMERICA<br>   Respondent | Civil No. 05-1031 (PG)<br>[Related to Criminal No. 03-350 (PG)] |

## MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

Eric Adorno-Rosario (hereafter "Adorno") filed a Motion to Correct Sentence pursuant to 28 U.S.C. § 2255 (**Docket No. 1**). Adorno seeks a correction of his sentence on the basis that it violates the holdings of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The government concedes that Adorno should be resentenced on his conviction in Count One, but contends that the sentences on the remaining counts should be left undisturbed (**Docket No. 7**).

This matter was referred to the undersigned for report and recommendation **(Docket No. 2)**. For the reasons set forth below, this Magistrate-Judge **RECOMMENDS** that the motion be **GRANTED** in part and **DENIED** in part.

**I.    Procedural and Factual Background**

Adorno was one of eight named defendants in a thirteen count superseding indictment. *Criminal Case No. 03-350(PG)*, Docket Nos. 2, 41. Adorno was charged in Counts One, Two, Three, Four, Five, Ten, Eleven and Twelve with conspiracy to commit credit card fraud in violation of 18 U.S.C. § 371, aiding and abetting bank fraud in violation of 18 U.S.C. §§ 2 and 1344, conspiracy to launder money in violation of 18 U.S.C. § 1956, identification fraud in violation of 18 U.S.C. § 1028(a)(3), § 1028(a)(4) and § 1028(a)(5), and access device fraud in violation of 18 U.S.C. § 1029(a)(3) and § 1029(a)(4).

In April 2003, the parties entered into a written plea agreement signed by Adorno, his

Civil No. 05-1031(PG)                                                                                                  Page 2

attorney, Francisco Acevedo, and an attorney for the government. *Criminal Case No. 03-350(PG)*, Docket No. 109. This plea agreement provided that Adorno would plead guilty to all counts in which he was charged, to wit: Counts One, Two, Three, Four, Five, Ten, Eleven and Twelve. The Plea Agreement also set forth the maximum applicable penalties for each count as follows:

- Count One: a term of imprisonment of not more than five years, a fine not to exceed $250,000, or both;
- Count Two: a term of imprisonment of not more than 30 years, a fine not to exceed $1,000,000, or both;
- Count Three: a term of imprisonment of not more than 20 years, a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or both;
- Counts Four, Five, Ten and Twelve: a term of imprisonment of not more than 15 years, a fine not to exceed $250,000, or both; and
- Count Eleven: a term of imprisonment of not more than 10 years, a fine not to exceed $250,000 or both.

The Plea Agreement provided for sentencing guidelines calculation for Counts One, Two, Three, Four, Five, Ten, Eleven and Twelve as follows: A Base Offense Level (hereafter "BOL") of 6 based upon U.S.S.G. § 2B1.1 setting the Guidelines for offenses involving bank fraud; an increase in the BOL of 14 points pursuant to U.S.S.G. § 2B1.1(b)(1)(G), because the losses exceeded $400,000[1]; an additional increase of 2 points pursuant to U.S.S.G. § 2B1.1(b)(2)(A) because the offense involved more than ten, but less than 50 victims; and two (2) extra points pursuant to U.S.S.G. § 2B1.1(b)(8) because the offense involved sophisticated means. The adjusted offense level calculation also called for an increase of 2 points pursuant to U.S.S.G. § 2B1.1(b)(9) because the offense involved the possession and use of a device

---

[1] This appears to be a typographical error as U.S.S.G. § 2B1.1(b)(1)(G) provides for losses exceeding $200,000, while USSG § 2B1.1(b)(1)(H) provides for losses exceeding $400,000. The Pre-Sentence Report relied upon U.S.S.G. § 2B1.1(b)(1)(H) in making its calculations. Also, during sentencing the Judge referred to losses of $400,000 and U.S.S.G. § 2B1.1(b)(1)(H).

making equipment; an increase of 2 points pursuant to U.S.S.G. § 2S1.1(b)(2)(B) because of the conviction under 18 U.S.C. § 1956 for money laundering; an increase in the BOL of 4 points provided defendant's role in the offense, pursuant to U.S.S.G. § 231.1 because Adorno's role was that of a leader.  Finally, petitioner was determined to be entitled to a three (3) point credit provided he had accepted responsibility pursuant to U.S.S.G. § 3E1.1(a).  The adjusted offense level (AOL) was determined to be at level of 29.

Within the plea agreement, there was no stipulation as to Adorno's criminal history category (CHC).  However, the Pre-Sentence Report reflects defendant had no prior criminal convictions, so that Adorno's criminal history category was I. Based on the total adjusted offense level of 29 and Adorno's criminal history category of I, the sentencing guideline imprisonment provided for and imprisonment range of 87 to 108 months. The parties recommended to the Court that Adorno be sentenced at the lower end of the applicable guideline range. Adorno acknowledged in the Plea Agreement that the sentence was to be left entirely to the sound discretion of the Court in accordance with the Sentencing Guidelines.

A change of plea hearing was held on April 6, 2004.  Adorno was found competent to plead, and after responding to the Court's inquiry, petitioner entered a plea of guilty. *Criminal Case No. 03-350(PG)*, **Docket No. 324**.

Adorno appeared for sentencing on August 20, 2004. *Id.* at **Docket Nos. 176, 306**. During sentencing the Court grouped, as closely related, Counts One, Two, Three, Four, Five, Ten, Eleven and Twelve, since the Counts involved the same general type offense. *Id.* at **Docket No. 306**, p. 7. The Court determined and concurred with the assessment that

Adorno's total adjusted offense level was 29, and his criminal history category was I. *Id.* at **Docket No. 306**, p. 9. The Court further determined that the applicable range of imprisonment was 87 to 108 months, with a fine range of $15,000 to $1,000,000, and a supervised release term of not more than three years as to Counts One, Three, Four, Five, Ten, Eleven, and Twelve and not more than five years as to Count Two. *Id.* The Court followed the parties' recommendations and sentenced Adorno to a term of imprisonment of 87 months; term which constituted the lower end of the guideline range. *Id.* The Court imposed restitution in the amount of $462,392.95, did not impose a fine and imposed a special monetary assessment in the amount of $100 for each count for a total of $800.00. *Id.* at pp. 10-11. At the time of the sentencing Adorno was advised of his right to appeal, but no appeal was taken.

Adorno now brings this § 2255 motion claiming that his sentence must be corrected based upon the holdings of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). More particularly, he contends that he should have been sentenced based upon a total offense level of 6, without the inclusion of other factors that enhanced his sentence.

## II.    Conclusions of Law

### A.    Legal Standard

Pursuant to 28 U.S.C. § 2255 there are four grounds upon which a federal prisoner may base a claim for relief. The petitioner may assert that: 1) the sentence was imposed in violation of the Constitution or laws of the United States; 2) the court was without jurisdiction

to impose such sentence; 3) the sentence was in excess of the maximum authorized by law; and, 4) that the sentence is otherwise subject to collateral attack. A federal prisoner may claim "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . ." 28 U.S.C. §2255. However, such a petition may be summarily denied where it contains mere bald assertions without specific factual allegations. *Barrett v. United States*, 965 F.2d 1184, 1186 (1st Cir. 1992).  Once sentence has been imposed, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255. *United States v. Noriega-Millán*, 110 F.3d 162, 166 (1st Cir. 1997).

If a motion fails to raise an issue cognizable under § 2255 or if the movant fails to make an adequate representation concerning cause and prejudice, a court may, in its discretion, deny the motion without conducting an evidentiary hearing. R. Governing Sec. 2255 Proceedings 4(b); *see also Barrett v. United States,* 965 F.2d 1184, 1186 (1st Cir.1992). In addition, even a facially adequate petition may be denied without a hearing where the alleged facts are conclusively refuted by the files and records of the case. *Id.*; *accord, Lema v. United States*, 987 F.2d 48, 51-52 (1st Cir. 1993).  In the case at bar, the undersigned finds a hearing unnecessary based upon the contents of the petition and the evidence on record, which includes the transcripts of the change of plea hearing and sentencing, the plea agreement and Pre-Sentence Report.

    **B.**    **Apprendi/Blakely Claim**

Adorno argues that the decisions in both, *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) affect his sentence. *Apprendi* holds that

"[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." 530 U.S. at 490. *Apprendi* "applies only when the disputed 'fact' enlarges the applicable statutory maximum and the defendant's sentence exceeds the original maximum" *United States v. Caba*, 241 F.3d 98, 101 (1st Cir. 2001).

In *Blakely,* the Supreme Court reiterated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely v. Washington*, 124 S.Ct. at 2536. The Court further clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 124 S.Ct. at 2537 (citing *Ring v. Arizona*, 536 U.S. 584, 602 (2002)). The undersigned notes, however, that the holding in *Blakely* was not made extensive to sentences imposed under the Federal Sentencing Guidelines. In its decision, the U.S. Supreme Court specifically stated that, since "[t]he Federal Guidelines are not before us, [and] we express no opinion on them." *Blakely,* 124 S.Ct. at 2538 n. 9.

Adorno cannot escape the fact that he not only admitted but rather stipulated to facts that supported the enhancements applied by the Court. The Plea Agreement included the stipulation that Adorno's BOL of 6 would be adjusted upwards by a total of 26 levels as set forth in the Sentencing Guidelines Calculation Table. **Criminal No. 03-350, Docket No. 109, pp. 6-7**. Additionally, the Plea Agreement included a Statement of Facts, which was

signed by Adorno and his attorney.  Within the same, and in open Court, Adorno acknowledged he was the co-leader for an organization involved in a scheme to defraud federally insured financial institutions and that the fraud exceeded the sum of $400,000.  It was also admitted that the fraud was committed through the use of counterfeit and unauthorized access devices and matching false identification documents. *Criminal No. 03-350*, **Docket No. 109**, Stipulated Version of the Facts. He further admitted that the members of the conspiracy used the counterfeit credit cards, together with false identification documents manufactured by members of the conspiracy to purchase merchandise from various businesses.  *Id.* The merchandise would then be used for personal benefit or sold for monies that would be redistributed to members of the conspiracy.   *Id.*  Adorno therefore, admitted in the Statement of Facts within the Plea Agreement to his role in the offenses charged.  Notably, the District Judge ascertained that Adorno understood and agreed to these adjustments during the Rule 11 hearing. *Id.* at **Docket No. 324, pp. 13-15.**  Finally, the Pre-Sentence Report, which made reference to Adorno's role in the offenses was not opposed by Adorno.  Accordingly, the sentencing court's findings as to Adorno's role in the offense and other applicable enhancements are supported by the contents of the  Plea Agreement (Statement of Facts)  and the evidence summarized within the Pre-Sentence Report and Adorno's admissions before the Court.

  The Court grouped the Counts together in a combined offense level considering that "the counts involve[d] the same general type of offense and the guideline for that type of offense determines the offense level primarily on the basis of the total amount of harm or loss,

the quantity of the substance involved or some other measure of aggregate harm". *Id.* at **Docket No. 306** , p. 7.  The court then sentenced Adorno to a term of 87 months imprisonment.  Adorno's sentence of 87 months of imprisonment does not exceed the statutory maximum for Counts Two, Three, Four, Five, Ten and Eleven.

The problem lies with the sentence as to Count One.  There, the statutory maximum sentence is 60 months.  As a result, when the Court sentenced in all Counts as a group, the 87 month term of imprisonment as to Count One exceeded the statutory maximum and thus, violates *Apprendi*.  In essence, this is the basis of Adorno's claim.  As has been stated on numerous occasions, "[n]o Apprendi violation occurs when the district court sentences a defendant below the default statutory maximum". *United States v. Barnes,* 244 F.3d 172, 177- 78 (1st Cir. 2001); *United States v. Campbell,* 268 F.3d 1 (1st Cir.2001).  In the case at bar, error occurred on the sentence in Count One inasmuch as, the 87 month term exceeds the statutory maximum of 60 months. The government concedes this error and proposes that Adorno's sentence as to Count One be corrected so that it does not exceed 60 months.  The government also asks that the sentence in the remaining counts be left undisturbed.  The undersigned considers the government's proposition an adequate solution.

In the end, a resentence in Count One makes little difference to the actual time Adorno was required to serve inasmuch as, the 87 month sentence for the remaining counts is valid and the sentences for all counts runs concurrent.  Regardless, in order to keep an accurate procedural record, the best course is to correct Adorno's sentence as to Count One.

### III.  Conclusion

Based upon the foregoing analysis, **IT IS RECOMMENDED** that motion for relied under 28 U.S.C. § 2255 (**Docket No. 1**) be **GRANTED** in part and **DENIED** in part; that Adorno's sentence be corrected as to Count One; and, that the sentences on the remaining counts be left undisturbed.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court. Any objections to the same must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980). The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED.**

At San Juan, Puerto Rico, this 28th day of September, 2005.

                                                            S/**AIDA M. DELGADO-COLON**
                                                            **U.S. Magistrate-Judge**